# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN STEPHEN KISSELL,

    Defendant.

Case No. 5:18-CR-40001-HLT

## MEMORANDUM AND ORDER

Defendant, who is charged with possession of a firearm by a prohibited person, moves to suppress a firearm and other evidence found during the traffic stop of the vehicle he was driving and statements he made during the stop. Doc. 29. He argues law enforcement illegally searched his vehicle, making the firearm and statements poisonous fruit of a Fourth Amendment violation. Alternatively, he argues that his statements were the product of un-*Mirandized*, custodial interrogation in violation of the Fifth Amendment. *Id.* The Court finds that law enforcement did not violate Defendant's Fourth Amendment rights. But the Court agrees with Defendant that law enforcement violated his Fifth Amendment rights by asking at the scene about the vehicle's contents. The Court therefore suppresses Defendant's responses to these questions and denies the rest of the motion.

## I.    BACKGROUND[1]

On September 13, 2017, at approximately 2:30 a.m., Sergeant Brett Butell and Deputy Dalton Atzenweiler of the Shawnee County Sheriff's Office were on patrol when they saw a red

---

[1] During the November 15, 2019 hearing, the Court heard testimony from now-Lieutenant Butell and ATF Special Agent Kyle Lovelady. Based on the law enforcement members' demeanor and attentiveness during questioning, the Court credits their testimony in its entirety. But the Court relays only those portions of their testimony relevant to its resolution of the motion.

Toyota Celica missing its rear bumper coming from the direction of a strip club. They followed it and observed it driving twenty miles per hour over the posted speed limit. It also braked throughout curves in a manner consistent with impaired driving. The officers activated their emergency lights, and Defendant pulled over to the side of NE Highway 24.

The officers approached the vehicle and spoke with Defendant. Defendant said he was going to pick up his boss in Perry before heading to Colorado for a construction job. Sgt. Butell asked if he owned the vehicle. Defendant said yes and explained that he had just bought the vehicle and was waiting for the title to arrive. Sgt. Butell then asked for Defendant's license, registration, and insurance. Defendant said he did not have identification. Defendant had slurred speech, glazed eyes, and was sweaty. He was also very fidgety and erratic while searching for the vehicle information, which he never produced. While searching, he admitted the vehicle was not his. When Sgt. Butell noted the discrepancy, Defendant replied that he had just bought the vehicle. But he did not know the name of the seller. Defendant eventually produced a Kansas corrections inmate identification, identifying him as John Kissell. Defendant admitted that he was on parole and stated that he was going to meet with his parole officer to get a travel pass before leaving the state. He gave the first name of his parole officer and the county where he was on parole. During the conversation, Sgt. Butell saw only a small backpack and purse in the vehicle.

Sgt. Butell returned to his cruiser and ran Defendant's name. He learned that Defendant was on state parole for aggravated battery, that his parole officer's name and county did not match the name or county that Defendant had just given, that Defendant's license was suspended with four previous convictions of driving while suspended, and that the vehicle Defendant was driving was registered to Luis Enrique Acosta. The vehicle was not reported stolen. Sgt. Butell returned to the vehicle and verified that the vehicle identification number ("VIN") matched the license plate.

While he verified the VIN, Defendant was speaking on the phone and stated that he needed to contact the seller to bring the registration. Sgt. Butell asked Defendant to hand him his keys and then placed them on top of the vehicle. A "one-hitter" pipe, commonly used to smoke marijuana, was attached to the keys and appeared to have been used. Sgt. Butell then consulted with Lieutenant Sam Leone, who had arrived at the scene, and told him that he did not smell alcohol but "I think he probably has some drugs on him. That's just a feeling." He did not mention the pipe.

Sgt. Butell decided to arrest Defendant for driving while suspended. He had Defendant step out of the vehicle and asked if he had any "guns, knives, or bazookas" on his person. Defendant said no. Sgt. Butell patted him down, removed two pocket knives, and handcuffed him. He did not read Defendant his *Miranda* rights.[2] Sgt. Butell left Defendant with Dep. Atzenweiler and Lt. Leone at the rear of the vehicle, opened the driver's side door, and asked: "Is there anything in the vehicle I should know about?" Defendant replied that his friend's pistol, from whom he had picked up the vehicle that night, was by the front seat. Sgt. Butell responded, "His pistol, huh. I thought you said you just bought it from him?" Defendant responded that he bought the vehicle that night, which he admitted did not make much sense, to which Sgt. Butell agreed. Dep. Atzenweiler separately asked Defendant about the vehicle's contents, and Defendant replied that there was marijuana, a weapon, and something in the backpack.

Sgt. Butell found the firearm between the driver's seat and center console and a large sum of money in a clip on the floorboard. He searched the backpack and found marijuana, scales, and other drug paraphernalia. He did not find any vehicle papers. He then had the vehicle towed, without impounding it.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

3

Based on the evidence collected, a grand jury indicted Defendant on January 10, 2018, for possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Doc. 1. Defendant subsequently moved to suppress the evidence found in the vehicle and his responses to questions at the scene about the vehicle's contents.

## II. ANALYSIS

The briefing requires the Court to resolve three issues: (1) whether Defendant has standing to challenge the search; (2) whether the automobile exception applies to the warrantless search of the passenger compartment of the vehicle; and (3) whether the public safety exception permitted law enforcement's un-*Mirandized* questions at the scene about the vehicle's contents. The Court addresses each issue below.

### A. Standing

As an initial matter, the government argues that Defendant lacks standing to assert a Fourth Amendment challenge to the search of the vehicle because he did not own it.[3] Fourth Amendment rights cannot be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). Thus, Defendant must demonstrate he had a "legitimate possessory interest in or a lawful control over the car." *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003) (alteration omitted) (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)).

Here, the Court finds that Defendant has demonstrated a legitimate possessory interest in or lawful control over the vehicle. Defendant did not assert ownership over the items seized or testify to an expectation of privacy. But he contends he had purchased the vehicle from Mr. Acosta at the time of the vehicle stop. To support this contention, Defendant offered the affidavit of Mr.

---

[3] The government cites *United States v. Gonzalez-Molina*, 2018 WL 4954090 (D. Kan. 2018), and *United States v. Banks*, 2019 WL 330518 (D. Kan. 2019), for support. But these cases are inapposite because they involved a non-owner driver where the owner was a passenger.

Acosta. In the affidavit, Mr. Acosta states that he was the registered owner of the vehicle and that he sold it to Defendant for approximately $1,000 in September 2017. In response to the affidavit, the government called ATF Special Agent Kyle Lovelady. He testified that he interviewed Mr. Acosta, and Mr. Acosta admitted that he could not provide a specific date of sale or any extrinsic evidence showing that he sold the vehicle to Defendant. Mr. Acosta also confirmed during the interview that he subsequently retrieved the vehicle from the tow lot. The government also produced a report indicating that Mr. Acosta purchased the vehicle on August 12, 2017, that he applied for title on September 1, 2017, and that title had not been transferred to anyone else.

The evidence before the Court indicates that any sale of the vehicle (if one in fact occurred) was highly informal. But Defendant is not required to prove ownership or to "submit legal documentation showing a chain of lawful custody from the registered owner to himself" to demonstrate standing. *Valdez Hocker*, 333 F.3d at 1209. Rather, he simply must demonstrate that he had a legitimate possessory interest in or lawful control over the vehicle. *Id.* And, here, the Court finds that Defendant has made this showing and established that, at a minimum, he at least had Mr. Acosta's permission to borrow the vehicle on the night of his arrest, which is enough for standing. *Id.*

B. **Automobile Exception**

Defendant argues that law enforcement violated his Fourth Amendment rights by searching his vehicle without a warrant.[4] The government contends the automobile exception applies because law enforcement had probable cause to believe the vehicle contained evidence that the vehicle was stolen and contained drugs or drug paraphernalia.

---

[4] The parties agree that law enforcement had a valid basis for stopping the vehicle and for arresting Defendant.

Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). The "automobile exception" to the warrant requirement allows police to "search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Id.* Probable cause to search exists where the circumstances warrant a reasonable person in believing that contraband or evidence of a crime is present. *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

The Court finds law enforcement had probable cause to search the vehicle for evidence that the vehicle was stolen. Although the vehicle was not reported stolen, the totality of the circumstances warrants a reasonable person to believe the vehicle was stolen and that it contained evidence of this crime. Late at night, Defendant provided a rolling and inconsistent theory of ownership. He initially said he owned the vehicle. He then reversed course and said he did not own the vehicle. When confronted with the inconsistency, he reverted and said he purchased the vehicle that night. Despite stating that he just purchased the vehicle, he did not know the seller's name or have any paperwork confirming the sale. And the information available to law enforcement indicated that the vehicle was registered to Mr. Acosta and had Mr. Acosta's license plate.

In addition, Defendant was fidgety and erratic while looking for paperwork. He could not produce identification, registration, or insurance. He had recently been released from prison but the name and county he gave for his parole officer did not match the records Sgt. Butell viewed. He provided an implausible story of meeting with his parole officer for a travel pass apparently after he was to pick up his boss at approximately 3:00 a.m. to head for a job in Colorado. He had scant luggage for a trip out of state and, interestingly, the vehicle he just allegedly purchased

contained a woman's purse. He also said he did not have any knives on his person despite having two pocket knives. In sum, the totality of the circumstances warranted a reasonably prudent person to believe that Defendant had stolen the car and that evidence of the theft could be found inside vehicle. *See, e.g., United States v. Maher*, 919 F.2d 1482, 1485-88 (10th Cir. 1990) (finding probable cause to arrest the defendant and search a trailer based on the combined weight of a stolen license plate, the trailer's unregistered status, the defendant's inability to identify the trailer's previous owner's full name and address, and the owner's failure to produce ownership documents).

Defendant contends the search is not warranted by the automobile exception because any evidence in the vehicle would have been exculpatory, not inculpatory. The Court disagrees. "Evidence of a vehicle's ownership is always relevant to the crime of driving a vehicle without the owner's consent, and ownership documents are often kept within a car." *United States v. Edwards*, 769 F.3d 509, 516 (7th Cir. 2014). Thus, law enforcement was not required to accept Defendant's word that there were no registration documents in the vehicle and could look for paperwork demonstrating ownership as well as search for other evidence indicating the vehicle had been stolen (e.g., the vehicle containing paperwork or other personal items that a seller would have removed before selling a vehicle, signs of forced entry into the vehicle, signs of violence, etc.). For these reasons, the Court finds that the automobile exception applies and declines to exclude the fruits of the search (the firearm, drug paraphernalia, and incriminating statements) based on a Fourth Amendment violation. And because this ruling is sufficient to resolve the Fourth Amendment issue, the Court does not address the government's alternative argument concerning probable cause to believe the vehicle contained drugs or drug paraphernalia.

### C. Public Safety Exception

Defendant next argues that law enforcement violated his Fifth Amendment rights when Sgt. Butell asked him if there was anything he should know about in the vehicle and when Dep. Atzenweiler separately asked Defendant about the vehicle's contents. The government agrees that these questions constitute an un-*Mirandized* custodial interrogation but contend the public safety exception applies.

The Fifth Amendment protects individuals from being compelled to incriminate themselves. To protect this right, the United States Supreme Court in *Miranda* established procedural safeguards that law enforcement must satisfy before beginning a custodial interrogation. *Miranda*, 384 U.S. at 444-45. If law enforcement fails to satisfy these safeguards, an individual's incriminating statements given while "in custody" and resulting from an "interrogation" are suppressed barring an exception. *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008). There are generally two recognized exceptions: (1) public safety, and (2) routine booking questions.

The Supreme Court announced the public safety exception in *New York v. Quarles*, 467 U.S. 649, 657 (1984). In *Quarles*, the Supreme Court determined that an officer may ask questions to a suspect in custody before a *Miranda* warning if the questions arise out of "an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." *Id.* at 659 n.8. Since *Quarles*, the Tenth Circuit has discussed the public safety exception and explained that, at minimum, an officer has a reasonable belief that he is in danger when he has "a reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *United States v. DeJear*, 552 F.3d 1196, 1201 (10th Cir. 2009) (citation omitted).

Here, law enforcement stopped Defendant late at night on the side of a highway. Defendant was the sole occupant of the vehicle, was compliant, and was arrested for the nonviolent offense of driving with a suspended license. There is no evidence of a crowd or of any bystanders. Rather, it appears that law enforcement had control of the scene. After handcuffing Defendant and moving him to the rear of the vehicle, law enforcement found two folded pocket knives on his person. There is no evidence suggesting Defendant had abandoned or discarded any other weapons. There is no evidence suggesting any exigent circumstances, any time constraints on searching the vehicle, or any likelihood that a member of the public could potentially encounter any weapon. Sgt. Butell then opened the driver's side door and broadly asked: "Is there anything in the vehicle I should know about?" On this record, even if the Court assumes that the pocket knives gave Sgt. Butell a reason to believe that Defendant might have (or recently have had) a weapon, the Court finds that there is no evidence to suggest that someone other than police might have gained access to that weapon and inflicted harm with it. *See, e.g.*, *United States v. Benard*, 680 F.3d 1206, 1212 (10th Cir. 2012) (holding the public safety exception was inapplicable when law enforcement asked a handcuffed defendant "what else" they might find in a car which law enforcement had control over and intended to impound).

The government cites Eighth Circuit case law for the proposition that the public safety exception includes concerns that law enforcement will unexpectedly encounter or mishandle weapons or drug paraphernalia hidden in an area to be searched. *See e.g.*, *United States v. Liddell*, 517 F.3d 1007, 1009-10 (8th Cir. 2008).[5] Thus far, the Tenth Circuit has not extended the public

---

[5] The Court specifically notes Judge Gruender's concurrence. Although he concurs with the majority based on precedent, he separately writes to express his concern that the Eighth Circuit's "decisions applying the public safety exception to *Miranda* have strayed from the Supreme Court's tethering of the exception to the existence of exigent circumstances." *Liddell*, 517 F.3d at 1010; *see also generally* Rorie A. Norton, *Matters of Public Safety and the Current Quarrel Over the Scope of the Quarles Exception to Miranda*, 78 Fordham L. Rev. 1931 (2010).

safety exception to include such concerns. Rather, the Tenth Circuit has limited the exception to situations where "someone other than police might gain access" to the weapon and inflict harm with it. *DeJear*, 552 F.3d at 1201 (emphasis added) (citation omitted). Cognizant of this limiting language and the narrow exception created by the Supreme Court in *Quarles*, the Court declines the government's invitation to extend the exception based on the facts of this case. Thus, the Court finds that Sgt. Butell's post-arrest questions at the scene about the vehicle's contents and Dep. Atzenweiler subsequent questions at the scene about the vehicle's contents constitute an un-*Mirandized* custodial interrogation and suppresses Defendant's responses.[6]

### III. CONCLUSION

The Court concludes that Defendant has standing to challenge the search but that the search was proper under the automobile exception. The Court also finds that law enforcement's post-arrest questions did not fall under the public safety exception and therefore violated *Miranda*.

THE COURT THEREFORE ORDERS that Defendant's Motion to Suppress (Doc. 29) is GRANTED IN PART and DENIED IN PART. The Court suppresses Defendant's responses to post-arrest questions at the scene about the contents of the vehicle and denies the rest of the motion. Specifically, the Court suppresses Defendant's response to Sgt. Butell's question "Is there anything in the vehicle I should know about?" and his response to Sgt. Butell's follow up question "His pistol, huh. I thought you said you just bought it from him?" The Court also suppresses Defendant's responses to Dep. Atzenweiler's subsequent questions about the vehicle's contents.

IT IS SO ORDERED.

Dated: December 3, 2019　　　　/s/ *Holly L. Teeter*
　　　　　　　　　　　　　　　　HOLLY L. TEETER
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[6] Defendant does not contend that the contraband would not have been found during the search absent his admissions. Regardless, the fruit of a *Miranda* violation is not subject to suppression, unless the statements were involuntary, which Defendant does not contend. *United States v. Phillips*, 468 F.3d 1264, 1266 (10th Cir. 2006).